## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CALEB ROGOVIN,** | **Civil Action No. _____** |
| **PLAINTIFF,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **TEMPLE UNIVERSITY HOSPITAL,** | |
| **and** | |
| **M. DENISE DENNISON,** | |
| **DEFENDANTS.** | |

## COMPLAINT AND JURY DEMAND

Plaintiff Caleb Rogovin, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages and other relief on behalf of Plaintiff Caleb Rogovin (hereinafter "Plaintiff" or "Mr. Rogovin"), a former employee of Temple University Hospital (hereinafter, "Defendant", "Temple" or the "Hospital"). Despite his dedication and consistent performance, Mr. Rogovin was harmed by Temple's discrimination and harassment on the basis of his disabilities or perceived disabilities, retaliation for seeking accommodations for his disabilities and/or perceived disabilities, and termination as a result of discrimination and retaliation.  Further, Temple failed and refused to accommodate Mr. Rogovin's disabilities and failed to engage in a good faith, interactive process with respect to accommodating Mr. Rogovin' disabilities.  Defendant M. Denise Dennison aided and abetted Temple's discrimination, harassment and retaliation as alleged herein.

2.       This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

3.       This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4.       The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.       This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6.       All conditions precedent to the institution of this suit have been fulfilled. On January 4, 2019, Plaintiff timely filed a Complaint of Discrimination with the Pennsylvania Huma Relations Commission ("PHRC"), which was dual-filed as a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  On March 3, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.  With respect to the PHRA claims alleged herein, it has been greater than one year since Plaintiff filed his Complaint of Discrimination with the PHRC.

## VENUE

7.       This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.      This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed and terminated by Defendant in this judicial district.

## PARTIES

9.      Plaintiff Caleb Rogovin is an adult citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10.     Mr. Rogovin is a qualified individual with a disability within the meaning of the ADA.

11.     Mr. Rogovin suffers from, among other things, Atrial Fibrillation – an irregular heartbeat.  Early in his career at Temple, in 2016, Mr. Rogovin had to go out on a medical leave for nearly six months to have a repair of a Type A Aortic Dissection.  Two years later, Mr. Rogovin developed Atrial Fibrillation.

12.     Mr. Rogovin's disabilities affect a major bodily function and substantially limit one or more major life activities.

13.     Mr. Rogovin's disabilities have affected him for a period far in excess of six months.

14.     During his employment, Defendants regarded Mr. Rogovin as disabled.

15.     Defendant Temple University Hospital is an academic medical center and teaching hospital offering inpatient and outpatient medical services with a location at 3401 North Broad Street, Philadelphia, Pennsylvania 19140.

16.     Defendant M. Denise Dennison was at all relevant times a Senior Administrator for Temple who supervised Mr. Rogovin.

17.     Ms. Dennison aided and abetted Temple's discrimination, harassment and retaliation as alleged herein.  Ms. Dennison has a business address at 3401 North Broad Street, Philadelphia, Pennsylvania 19140.

18.     At all relevant times, Defendant Temple is and has been an employer employing more than 500 employees.

19.     At all relevant times, employees of Defendant Temple acted as agents and servants for Defendant Temple.

20.     At all relevant times, employees of Defendant Temple were acting within the scope of their authority and in the course of employment under the direct control of Defendant Temple.

21.     At all times material hereto, Defendant Temple acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant Temple and in furtherance of Defendant Temple's business.

22.     At all relevant times hereto, Plaintiff Caleb Rogovin was an "employee" of Defendant Temple within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

23.     At all relevant times hereto, Defendants each were an "employer" and/or "person" under the laws at issue in this matter and are accordingly subject to the provisions of said laws.

24.     This cause of action arose out of transactions or occurrences that took place in whole or in part in Philadelphia, Pennsylvania.

25.     Defendants conduct substantial business within Philadelphia, Pennsylvania.

26.     This Honorable Court has personal jurisdiction over the Defendants.

## FACTS

27.     Mr. Rogovin began his employment as a Certified Registered Nurse Anesthetist

("CRNA") with the Temple University Hospital Department of Anesthesiology in June of 2006.

28.     During his employment with Temple, Mr. Rogovin was a dedicated and loyal

employee who performed his duties in an excellent manner.

29.     While employed by Temple, Mr. Rogovin was supervised in his position by M.

Denise Dennison, Senior Administrator for the Department of Anesthesiology.

30.     In or about 2016, Mr. Rogovin was compelled to take medical leave for nearly six

months to repair a Type A Aortic Dissection.

31.     Two years later, in 2018, Mr. Rogovin developed Atrial Fibrillation, a disability

characterized by an irregular and often faster heartbeat.

32.     Throughout his employment, Mr. Rogovin was well-respected by the department

and, during a one-year period of time, was the only CRNA working weekends for the Hospital.

33.     Despite his dedication, loyalty and consistent performance, Mr. Rogovin was

subjected to discrimination and harassment by his supervisor, Ms. Dennison, as a result of his

disabilities or because Ms. Dennison perceived Mr. Rogovin to be disabled.

34.     Ms. Dennison made clear that she held a discriminatory animus against Mr.

Rogovin based on his disabilities or because she perceived Mr. Rogovin to be disabled.

35.     For example, whenever Mr. Rogovin was out of work for longer than a 3-day

period due to his disability, Ms. Dennison mandated that Mr. Rogovin obtain a note from his

physician.

36.     In addition, upon his return from medical leave, Ms. Dennison demanded that Mr. Rogovin show the Attending Anesthesiologist a note from his physician stating that Mr. Rogovin was permitted to return to work.

37.     The Attending Anesthesiologist told Mr. Rogovin that if he did not provide the note, then the Attending Anesthesiologist would be required to send Mr. Rogovin home.

38.     Ms. Dennison refused to answer any of Mr. Rogovin's questions or address any of his concerns or complaints regarding employment issues.

39.     In December 2016, Mr. Rogovin was chosen to fill a newly created role of Chief CRNA, which was a management level position.

40.     In Mr. Rogovin's new role as Chief CRNA, Ms. Dennison increasingly added administrative tasks to Mr. Rogovin's list of duties and responsibilities.

41.     Moreover, even though Mr. Rogovin was no longer in a Union position as Chief CRNA, but rather, was in an Administrative/Leadership role, Ms. Dennison continued to (incorrectly) apply all the Union rules to Mr. Rogovin and treat him like a staff CRNA.

42.     Ms. Dennison's poor treatment of Mr. Rogovin, coupled with other challenges Mr. Rogovin faced because of his disabilities, led Mr. Rogovin to indicate that he would be stepping down from his position as Chief CRNA in January 2018 and request to be reinstated to a CRNA position with Temple.

43.     Temple management initially refused to allow Mr. Rogovin to return to his non-management position, claiming that there was an unwritten policy prohibiting employees who held management positions from returning to positions where they would be members of the collective bargaining unit.

44.     By April 2018, Ms. Dennison's treatment of Mr. Rogovin had deteriorated to the point that, despite their offices being directly next door to one another, Ms. Dennison communicated with Mr. Rogovin almost exclusively through email.

45.     Because of his value to Temple in the Chief CRNA position, Mr. Rogovin was kept in the Chief CRNA position until May 2018, despite his request in January to step down.

46.     At the end of May 2018, Mr. Rogovin was permitted to return to full time clinical practice as a CRNA.

47.     After returning to his position as a CRNA, Mr. Rogovin requested to use Sick Leave to have an Atrial Fibrillation Ablation procedure to help alleviate his Atrial Fibrillation.

48.     Almost immediately after requesting a few days of leave to address his disability as an accommodation, Mr. Rogovin was abruptly terminated by Temple, allegedly for insubordination.

49.     On Friday, July 13, 2018, Mr. Rogovin was told to, and did, report to Ms. Dennison's office at the end of his shift.

50.     In Ms. Dennison's office, Ms. Dennison asked Mr. Rogovin why he "had a such a difficult time communicating."

51.     In response, Mr. Rogovin stated that he did not believe he had any communication problems.

52.     Ms. Dennison then informed Mr. Rogovin that he was being placed on Administrative Leave for three (3) days, beginning on Monday, July 16, 2018.

53.     As Mr. Rogovin had previously scheduled vacation days for Thursday, July 19, and Friday, July 20, Ms. Dennison informed him that they would meet again upon Mr. Rogovin's return to work on Monday, July 23, 2018, at 9:00 a.m.

54.     Upon his return to work on Monday, July 23, 2018, Mr. Rogovin was told by the Administrative Assistant to report directly to the Anesthesia Library.

55.     At the Library, Ms. Dennison handed Mr. Rogovin an envelope containing his termination letter.

56.     Ms. Dennison did not say a word to Mr. Rogovin during the entire exchange.

57.     Mr. Rogovin was then escorted to his office by Associate Hospital Director Adam Messer, told to collect his personal belongings, and escorted out of the building.

58.     There was no discussion, or any statement made by Ms. Dennison or Mr. Messer regarding Mr. Rogovin's termination or reasons for his termination.

59.     The termination letter states that Mr. Rogovin "refused to follow direction from [his] managers" and "refused to recognize [his] manager's authority."

60.     The termination letter further states that this conduct "warrants termination."

61.     The letter was signed by Ms. Dennison and Mr. Messer.

62.     Temple's proffered reasons for Mr. Rogovin's termination are extremely suspect for a number of reasons, due to the close proximity in time between his request for accommodation and his termination, and due to the fact that Mr. Rogovin had not engaged in any insubordinate or inappropriate behavior in any way.

63.     These suspicious circumstances, and particularly, the timing of Mr. Rogovin's sudden termination (which occurred almost immediately after his request for a very limited accommodation), coupled with the unjustified grounds for termination, suggest that Mr. Rogovin's termination was motivated by discrimination and retaliation.

64.     Given his several years of dedicated service to Temple, Temple's treatment of Mr. Rogovin after his medical leave for his disability, and the circumstances surrounding his

8

termination, Mr. Rogovin maintains that he was discriminated against and harassed on the basis of his disability and/or perceived disability, that he was subjected to retaliation for requesting an accommodation for his disabilities, that Temple failed to engage in a good faith, interactive process with respect to accommodating his disabilities, and that his termination was a result of discrimination and retaliation.

65.     Mr. Rogovin has been discriminated against, harassed and retaliated against by Temple in violation of the ADA and PHRA.

66.     Temple failed and refused to accommodate Mr. Rogovin's disabilities and failed to engage in a good faith, interactive process with respect to accommodating Mr. Rogovin's disabilities in violation of the ADA and PHRA.

67.     Mr. Rogovin has suffered and continues to suffer mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendants.

68.     Defendant Temple and its agents involved in discriminating against, harassing and retaliating against Mr. Rogovin all acted with the intent of causing, or with reckless disregard for the probability that their actions would cause, Mr. Rogovin severe emotional distress.

69.     Mr. Rogovin has suffered financial losses, which include, among other things, lost wages and an obligation for attorneys' fees and costs of bringing suit, as a proximate result of the actions and inactions of Defendants.

**COUNT I**
**The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.**
**(Plaintiff v. Defendant Temple)**

70.      Plaintiff Caleb Rogovin repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

71.     Based on the foregoing, Defendant Temple has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

72.     In discriminating against and harassing Mr. Rogovin on the basis of his disability and/or because Defendant Temple regarded Mr. Rogovin as disabled, in denying Mr. Rogovin his requested accommodation, in failing to engage in a good faith, interactive process with respect to accommodating Mr. Rogovin's disabilities, and in retaliating against Mr. Rogovin for requesting accommodations, Defendant Temple violated the ADA.

73.     Said violations were intentional and willful.

74.     Said violations warrant the imposition of punitive damages.

75.     As the direct and proximate result of Defendant Temple's violation of the Americans with Disabilities Act, Plaintiff Caleb Rogovin has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

### COUNT II
**Pennsylvania Human Relations Act, 29 U.S.C. § 2611, et seq.**
**(Plaintiff v. All Defendants)**

76.     Plaintiff Caleb Rogovin repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

77.     Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the PHRA.

78.     In discriminating against and harassing Mr. Rogovin on the basis of his disability and/or because Defendant Temple regarded Mr. Rogovin as disabled, in denying Mr. Rogovin his requested accommodation, in failing to engage in a good faith, interactive process with

respect to accommodating Mr. Rogovin's disabilities, and in retaliating against Mr. Rogovin for requesting accommodations, Defendant Temple violated the PHRA.

79.     Ms. Dennison aided and abetted Temple's discrimination, harassment and retaliation in violation of the PHRA as alleged herein.

80.     As the direct result of the aforesaid unlawful employment practices engaged in by Defendants, Plaintiff Caleb Rogovin has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

81.     Plaintiff Caleb Rogovin repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Caleb Rogovin respectfully requests that this Court enter judgment in his favor and against Defendants, and Order:

a.   Appropriate equitable relief, including reinstatement or front pay;

b.   Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and retaliation;

c.   Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendants' unlawful conduct;

d.   Defendants to pay Plaintiff punitive damages;

e.  Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendants to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g.  Plaintiff be granted any and all other remedies available under the ADA and PHRA; and

h.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Caleb Rogovin hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP


By:     */s/ Christopher A. Macey, Jr.*
        Christopher A. Macey, Jr., Esquire
        Bell & Bell LLP
        1617 John F. Kennedy Blvd., Suite 1254
        Philadelphia, PA 19103
        (215) 569-2500
        PA Attorney ID: 207800
        *Attorneys for Plaintiff Caleb Rogovin*

Dated: May 28, 2020